E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 20 2026 8:30 AM

PIERCE COUNTY CLERK
NO: 26-2-07952-3

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF PIERCE

| | |
|---|---|
| MARIAH MEADE, on behalf of herself and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OGORGEOUS INC. *d/b/a* POPFLEX,<br><br>Defendant. | No. _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Mariah Meade ("Plaintiff"), on behalf of herself and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant oGorgeous Inc. d/b/a POPFLEX ("POPFLEX" or "Defendant") as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email to a

CLASS ACTION COMPLAINT – 1

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Washington resident's email address that "[c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

3. Defendant oGorgeous Inc. d/b/a POPFLEX. ("POPFLEX" or "Defendant") engages in the precise activity which CEMA prohibits.

4. POPFLEX spams Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with POPFLEX's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6. And through this deceptive time-sensitivity, POPFLEX falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Pierce County under RCW 4.12.020(3) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this County.

## III. PARTIES

10. Plaintiff Mariah Meade is a resident of Pierce County, Washington.

CLASS ACTION COMPLAINT – 2

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

11. Defendant, oGorgeous Inc. d/b/a POPFLEX, is a for profit corporation, incorporated in Texas with its principal place of business at 300 Beardsley Lane, Suite C101, Austin, Texas 78746.

## IV.   FACTUAL ALLEGATIONS

**A.   CEMA protects Washington consumers from deceptive spam emails.**

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice"

CLASS ACTION COMPLAINT – 3

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19.     Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20.     This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21.     Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22.     The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23.     CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24.     CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25.     CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while

CLASS ACTION COMPLAINT – 4

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

facilitating commerce "by eliminating fraud and deception." *Id.*

26.     CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27.     CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28.     The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.     The subject lines of POPFLEX's marketing emails make false time scarcity claims.**

29.     One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30.     The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31.     "False or misleading scarcity claims can change the behaviour of consumers."

CLASS ACTION COMPLAINT – 5

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

*Online Choice Architecture, supra* para. 29, at 27.

32.     Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33.     False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34.     Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35.     Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36.     False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37.     Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38.     False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

CLASS ACTION COMPLAINT – 6

39. POPFLEX designs and manufactures active apparel for women.[1]

40. To advertise and encourage sales from its website, www.popflexactive.com, POPFLEX frequently sends spam emails to consumers with misleading and deceptive subject headings.

41. **Urgent Spam Emails.** Unfortunately, for those recipients, POPFLEX regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples below.

42. POPFLEX's deceptive strategy is no more readily apparent than in its fake promotion extensions. In these examples, POPFLEX announces promotional pricing, presenting that pricing as a scarce or time-limited opportunity. Once the advertised deadline has ostensibly passed, POPFLEX "extends" the promotion to a new end date.

43. This misleading marketing strategy allows POPFLEX to maximize sales during the life of a promotion and the subsequent extension. By using false deadlines, POPFLEX's approach prevents consumers from making informed purchasing decisions.

44. POPFLEX used this deceptive extension practice for its Black Friday sale in November 2024.

45. On November 29, 2024, POPFLEX sent an email to consumers with the subject line: "Hurry! Black Friday ends TONIGHT!" The body of the email confirmed that the promotion offered savings of up to 75% off items on POPFLEX's website while fine print at the bottom of the email included language reinforcing the end-date advertised in the subject line: "Black Friday Sale ends 11/29 at 11:59 pm PT or while supplies last." The email also featured a countdown timer emphasizing the limited time remaining until the promotion's purported deadline.

---

[1] *Our Story*, POPFLEX, https://www.popflexactive.com/pages/our-story (last visited Apr. 15, 2026).

CLASS ACTION COMPLAINT – 7

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

46. Later that same day, POPFLEX sent another email to consumers with the subject line: "FINAL HOURS: Save up to 75% →" The body of the email emphasized that time was "running out" to save up to 75% off sitewide and included another countdown clock indicating the sale would end at 11:59 p.m. that same night. The fine print at the bottom of the email also included the disclaimer reinforcing the end-date of the sale: "Black Friday Sale ends 11/29 at 11:59 pm PT or while supplies last."

47. Yet, the very next day on November 30, 2024, POPFLEX sent an email to consumers with the subject line: "EXTENDED SALE (bc we ❤️ you)." The body of the email informed consumers that POPFLEX extended the same 75% off Black Friday deal for an extra three days.

48. Despite the clear deadlines and warnings contained in POPFLEX's emails, the Black Friday sale was not in its "FINAL HOURS" as the November 29, 2024, subject lines warned. In truth, consumers would have until December 2, 2024, considerably more time to obtain the advertised discounts.

49. POPFLEX used this same strategy again for its Annual Sale on August 31, 2025, when it sent an email with the subject line: "ENDS TONIGHT: Annual Sale!" The body of the email included a countdown clock indicating that consumers had until 11:59 p.m. to save up to 60% off, as well as a warning to "[g]rab your favs before they're gone." The fine print of the email included a disclaimer that the "Annual Sale ends 8/31/25 at 11:59 pm PT or while supplies last."

50. But the 60% off deal did not end that night. On September 1, 2025, POPFLEX sent consumers an email with the subject line: "SALE EXTENDED for Labor Day!" The body of the email advertised the same deal for up to 60% off.

51. Thus, POPFLEX's August 31 subject line warning consumers that the 60% off sale

CLASS ACTION COMPLAINT – 8

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

"Ends Tonight" communicated a false deadline because consumers had one more day to take advantage of the 60% off pricing.

52.    POPFLEX used the same technique for its Black Friday sale. On November 28, 2025, POPFLEX announced its Black Friday Sale in an email with the subject line "WAKE UP! IT'S BLACK FRIDAY!" The preview text of the email informed consumers "[s]ave up to 70% off ends tonight ⌛ [.]" The fine print of the email included a disclaimer that the "Black Friday Sale ends 11/28 at 11:59 pm PT or while supplies last."

53.    Later the same day, POPFLEX sent another email marketing its Black Friday sale with the subject line: "Hurry! Up to 70% off deals end TONIGHT!" The body of the email emphasized that POPFLEX's "bestsellers at their best price of the year ends soon!" The email also included a countdown clock emphasizing that the "year's best deals ends" at 11:59 pm that same night.

54.    But consumers could have slept in on Black Friday because November 28 was not the last chance to take advantage of up to 70% off.

55.    On November 29, 2025, POPFLEX sent an email to consumers with the subject line: "CYBER WEEKEND SALE ⚡ " and the headline: "Save up to 70% is extended (just for you)[.]" Text in the body of the email made it clear that customers had "3 extra days of Black Friday deals."

56.    POPFLEX's "deals end TONIGHT" representation in its November 29 subject line was not true. Consumers had three additional days to save up to 70% off on the Black Friday deal.

57.    In short, POPFLEX engages in email marketing strategies whereby it creates a false sense of urgency, misrepresents when sales end, and then arbitrarily extends those sales to rope in consumers with subject headings that are just not true.

CLASS ACTION COMPLAINT – 9

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

58.    These and other examples of POPFLEX's commercial emails whose subject lines contain false or misleading statements are attached to this Complaint as Exhibit A.

**C.    POPFLEX knows when it sends emails to Washington residents.**

59.    A sophisticated commercial enterprise, like POPFLEX, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

60.    First, the sheer volume of POPFLEX's email marketing put it on notice that Washington residents would receive its emails.

61.    Second, POPFLEX may obtain location information tied to email addresses when consumers make purchases from POPFLEX through digital platforms, including POPFLEX website, or otherwise self-report such information to POPFLEX.

62.    Third, POPFLEX may obtain location information tied to email addresses by tracking the IP addresses of devices used to open POPFLEX emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

63.    Fourth, POPFLEX may obtain location information tied to email addresses through the use of sophisticated marketing and analytics platforms. Specifically, to manage its email marketing campaigns, POPFLEX appears to use Klaviyo to manage its email marketing campaigns. POPFLEX informs POPFLEX where the recipients of its marketing emails are located using IP geolocation and other data extracted from recipients' interactions with POPFLEX, which POPFLEX tracks in detail.[2] Thus, this platform should allow POPFLEX to access a list of every

_____

[2] *See* "Understanding when and how Klaviyo sets a profile's location," Klaviyo (July 7, 2025) (describing "how a profile's location and timezone information are set and updated"), https://help.klaviyo.com/hc/en-us/articles/115005073907/; "Understanding profiles in Klaviyo," Klaviyo (Aug. 5, 2025) ("Each individual profile

CLASS ACTION COMPLAINT – 10

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

email address that was sent a marketing email. It should also allow POPFLEX to determine who viewed the emails and who clicked on any links within them.

64.    Fifth, POPFLEX may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

65.    Sixth, POPFLEX may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

66.    Seventh, POPFLEX may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

67.    It is thus highly probable that a seller of POPFLEX's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.    POPFLEX violated Plaintiff's rights under CEMA to be free from deceptive commercial emails.**

68.    POPFLEX has bombarded Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

69.    For example, Plaintiff received emails containing false or misleading subject lines

---

features an activity log to capture a timeline of their interactions with your business," including receiving emails, opening emails, and clicking links within emails.), https://help.klaviyo.com/hc/en-us/articles/115005247088/.

CLASS ACTION COMPLAINT – 11

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

sent by POPFLEX, as described above in Section B. These messages were sent to Plaintiff's personal Gmail address.

70.    Plaintiff received the November 28, 2025, email titled "Hurry! Up to 70% off deals end TONIGHT!" Described *supra* ¶¶ 52-56.

71.    This email contained false or misleading subject lines, in violation of CEMA, that misrepresented the timing and availability of promotional offers, and therefore, fundamentally, POPFLEX's prices.

72.    Put differently, the email Plaintiff received contained false or misleading statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.    CLASS ACTION ALLEGATIONS

73.    Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington residents holding an email address to which Defendant POPFLEX sent or caused to be sent any email listed in Exhibit A during the Class Period.

74.    Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant have a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

75.    The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

76.    Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

77.    The Class is so numerous that joinder of all members is impracticable because the

CLASS ACTION COMPLAINT – 12

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Class is estimated to minimally contain thousands of members.

78.    There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the CPA; and whether Defendant should be enjoined from such conduct.

79.    Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

80.    Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

81.    Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

82.    The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual

CLASS ACTION COMPLAINT – 13

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

83. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI.    CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

84. Plaintiff incorporates and realleges paragraphs 1–72 above.

85. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

86. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

87. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

88. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through

CLASS ACTION COMPLAINT – 14

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

"information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

89.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

90.    For Defendant's violation of CEMA, Plaintiff are entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

91.     Plaintiff incorporates and realleges paragraphs 1–72 above.

92.    The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

93.    A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

94.    A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

95.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

96.    Each of the Defendant are a "person" within the meaning of CEMA. RCW 19.190.010(11).

CLASS ACTION COMPLAINT – 15

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

97.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

98.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

99.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

100.    For Defendant's violation of the CPA, Plaintiff and putative class members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of suit, including reasonable attorneys' fees.

## VII.    JURY DEMAND

101.    Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII.    PRAYER FOR RELIEF

Plaintiff asks the Court:

A.    Certify the proposed Class, appoint Plaintiff as Class representatives, and appoint undersigned counsel as Class counsel;

B.    Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

CLASS ACTION COMPLAINT – 16

C.    Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D.    Award Plaintiff's cost of suit, including reasonable attorneys' fees; and

E.    Order such further relief the Court finds appropriate.

Date: April 20, 2026

/s/ Samuel J. Strauss
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

*Counsel for Plaintiff
and the Putative Class*

**\* Applications for admission
*pro hac vice* forthcoming**

CLASS ACTION COMPLAINT – 17

# — EXHIBIT  A —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF PIERCE

MARIAH MEADE, on behalf of herself and
on behalf of others similarly situated,

               Plaintiff,

    v.

OGORGEOUS INC. d/b/a POPFLEX,

               Defendant.

No. _____

CLASS ACTION COMPLAINT

<u>EXHIBIT A</u>

| Date | Subject Line |
|------|--------------|
| November 29, 2024 | Hurry! Black Friday ends TONIGHT! |
| November 29, 2024 | FINAL HOURS: Save up to 75% → |
| August 31, 2025 | ENDS TONIGHT: Annual Sale! |
| November 28, 2025 | Hurry! Up to 70% off deals end TONIGHT! |

CLASS ACTION COMPLAINT
EXHIBIT A – 1

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com